**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

(1)PAKCO INVESTMENTS, L.L.C., individually and derivatively on behalf of NEOWORLDER ENTERPRISES, INC., and
(2) VISION STREAM, L.L.C., individually and derivatively on behalf of NEOWORLDER ENTERPRISES, INC.,

Plaintiffs,

v.

(3) JAMES DUCHENNE,

Defendant,

and

(4) NEOWORLDER ENTERPRISES, INC.,

Nominal Defendant.

Case No. 26-CV-00679-JFJ

**VERIFIED COMPLAINT**
(Individual and Shareholder Derivative Action)

**JURY TRIAL DEMANDED**

**VERIFIED COMPLAINT**

Plaintiffs PAKCO Investments, L.L.C. ("PAKCO") and Vision Stream, L.L.C. ("Vision Stream") (together, "Plaintiffs"), individually and derivatively on behalf of Neoworlder Enterprises, Inc. ("NeoWorlder" or the "Company"), by and through undersigned counsel, for their *Verified Complaint* against defendant, James Duchenne ("Defendant"), allege as follows:

**INTRODUCTION**

1. This action arises from Defendant's betrayal of the company he led and the investors who funded it. While serving as the Chief Executive Officer, a director, and the primary developer and leader of NeoWorlder, an artificial intelligence and cryptocurrency venture, and while controlling NeoWorlder's majority shareholder, Defendant solicited and accepted substantial capital (i.e., in excess of $1.5 million) from Plaintiffs.

2. Unbeknownst to Plaintiffs, Defendant intended, apparently all along, to step away from the Company in order to allegedly improve the value of the Company's cryptocurrency token. Further, and unbeknownst to Plaintiffs, around the same time PAKCO made its second investment (i.e., February 2026), Defendant began to secretly engage in a "pump and dump" scheme with a third-party involving NeoWorlder's assets. In audio recordings, Defendant and his co-conspirator can be heard discussing how to divide the proceeds of their scheme, how to hide those proceeds from Vision Stream's manager, what additional opportunities they could usurp, including gaming opportunities Defendant explicitly stated he would not bring to NeoWorlder, and how to collapse the value of Vision Stream's shares so they could be acquired for pennies on the dollar.

3. Defendant never disclosed his scheme to Plaintiffs, nor his apparent inevitable resignation from the Company as CEO. Defendant knew Plaintiffs could not realize the value of their investments without his involvement, knowledge, and expertise, and he exploited that dependence, all while privately belittling Plaintiffs, on recording, for their lack of knowledge of the artificial intelligence and cryptocurrency field.

4. After the scheme was exposed through the audio recordings, Defendant resigned on or about April 22, 2026, effective May 22, 2026. Even then, while he still owed fiduciary duties to NeoWorlder and its shareholders, Defendant refused to discuss how to position NeoWorlder profitably unless Plaintiffs first released their claims against him.

5. As a direct result of Defendant's resignation and attempted self-dealing, NeoWorlder went from a viable enterprise to a nearly worthless entity, having lost its good will and Plaintiffs' investments were destroyed.

6. Plaintiffs bring this action individually, and derivatively on behalf of NeoWorlder, to recover the damage caused by Defendant's violations of the Securities Exchange Act of 1934

and Rule 10b-5 promulgated thereunder, violations of the Oklahoma Uniform Securities Act of 2004, fraud, constructive fraud, breaches of fiduciary duty, civil conspiracy, unjust enrichment, breach of contract, and tortious interference with prospective economic advantage.

**THE PARTIES**

7. Plaintiff, PAKCO Investments, L.L.C., is a limited liability company organized and existing under the laws of the State of Oklahoma. PAKCO's membership is comprised of Chad Brinson, an Oklahoma resident, and another Texas resident. Chad Brinson is the majority owner and Manager of PAKCO.

8. Plaintiff Vision Stream, L.L.C. is a limited liability company organized and existing under the laws of the State of Oklahoma. Vision Stream's membership is comprised of Lance Baker, an Oklahoma Resident.

9. Plaintiffs are shareholders of NeoWorlder. PAKCO owns 18% of the Company. Vision Stream owns 32% of the Company. Each plaintiff was a shareholder of NeoWorlder at the time of the transactions and conduct complained of herein and has continuously held its shares since that time.

10. Defendant is an individual who, upon information and belief, resides in and is domiciled in the State of North Carolina and is therefore a citizen of North Carolina for purposes of diversity jurisdiction. At all relevant times until his resignation became effective on or about May 22, 2026, Defendant was the Chief Executive Officer, a member of the Board of Directors (the "Board"), and the primary developer and leader of NeoWorlder.

11. Defendant is, and at all relevant times was, the beneficial owner and controlling person of Javestone, L.L.C. ("Javestone"). Javestone owns 50% of NeoWorlder's issued and outstanding shares.

12. Nominal defendant Neoworlder Enterprises, Inc. is a corporation organized and existing under the laws of the State of Wyoming with its principal place of business in Wyoming. NeoWorlder is an artificial intelligence and cryptocurrency venture. NeoWorlder is named as a nominal defendant solely in its capacity as the entity on whose behalf Plaintiffs assert derivative claims.

**JURISDICTION AND VENUE**

13. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, arise under the laws of the United States. This Court also has jurisdiction over those claims pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

14. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

15. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiffs, on the one hand, and Defendant and Nominal Defendant NeoWorlder, on the other. Plaintiffs' members are citizens of Oklahoma and Texas. Defendant is a citizen of North Carolina; and NeoWorlder is a Wyoming corporation.

16. This Court has personal jurisdiction over Defendant. Section 27 of the Exchange Act, 15 U.S.C. § 78aa, authorizes nationwide service of process, and Defendant resides in the United States. This Court also has personal jurisdiction over Defendant as to Plaintiffs' state law claims because those claims arise from the same nucleus of operative facts as Plaintiffs' Exchange

Act claims. Moreover, Defendant has conducted business in the Northern District of Oklahoma in person, including in relation to the sale of securities described herein.

17. Independently, Defendant is subject to specific personal jurisdiction in Oklahoma under Okla. Stat. tit. 12, § 2004(F) because he purposefully directed his conduct at Oklahoma and the claims asserted herein arise out of that conduct. Among other things, Defendant (a) conducted business in the Northern District, as CEO of Neoworlder, including the solicitation of securities herein; (b) directed communications to Plaintiffs in Oklahoma; and (v) received investment funds transferred from Oklahoma; and (f) committed tortious acts causing injury to Plaintiffs in Oklahoma.

18. Venue is proper in this District pursuan to 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 78aa because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District as previously alleged.

19. Pursuant to Federal Rule of Civil Procedure 23.1(b)(2), this action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

## FACTUAL ALLEGATIONS

### I. **NeoWorlder.**

20. NeoWorlder is an artificial intelligence and cryptocurrency venture. Among other products, it developed an online platform and cryptocurrency token.

21. At all relevant times, Defendant was NeoWorlder's Chief Executive Officer, a member of its Board, and the primary developer and leader of NeoWorlder's technology and business.

22. Through his beneficial ownership and control of Javestone, Defendant also controlled NeoWorlder's majority shareholder until after his resignation in May 2026.

23. Defendant knew that neither Plaintiff was capable of realizing the value of NeoWorlder, including the value of Plaintiffs' investments, without Defendant's involvement, knowledge, and expertise. Plaintiffs placed their trust and confidence in Defendant to manage NeoWorlder honestly and in the best interests of the Company and its shareholders.

24. Defendant was aware of, and exploited, Plaintiffs' dependence on him. Indeed, Defendant routinely belittled Plaintiffs on recording and often bragged about how the Company would not succeed without him. This is ironic, because at one point in time, Defendant can be heard talking about how he had to resign in order for the Company to succeed.

## II. Defendant Solicits Plaintiffs' Investments in NeoWorlder.

25. Vision Stream became a shareholder of NeoWorlder when it was founded in 2024. In total, Vision Stream has invested in excess of $1,000,000.00 into NeoWorlder. Vision Stream owns 32,000 shares of the issued and outstanding shares of the Company.

26. PAKCO first became a shareholder of NeoWorlder in July 2025 and acquired 5,000 shares of the issued and outstanding shares of the Company. In February 2026, shortly before Defendant's pump and dump scheme was revealed, PAKCO made a second investment into NeoWorlder and acquired another 5,556 shares of stock. PAKCO has purchased further stock and currently holds 18,451 shares of the issued and outstanding shares of the Company.

27. The interests Plaintiffs purchased in NeoWorlder are "securities" within the meaning of the Exchange Act, 15 U.S.C. § 78c(a)(10), and the Oklahoma Uniform Securities Act of 2004, 71 O.S. § 1-102.

28. Defendant personally solicited Plaintiffs' investments. In soliciting those investments, Defendant made representations to Plaintiffs regarding his intended conduct as NeoWorlder's leader and the integrity and value of NeoWorlder, including that he would lead the

company during its token offering through his connections in the cryptocurrency space and would ensure that NeoWorlder would be a viable enterprise. Further, at no point in time did Defendant inform PAKCO that in order for the Company to succeed, Defendant would have to leave his role as CEO of the Company. Defendant also failed to inform Plaintiffs that he intended on engaging in a pump and dump scheme and usurp corporate opportunities, such as the gaming opportunity Defendant explicitly stated he would not bring to the Company.

29. The statements and omissions were materially false and misleading because, as set forth below, Defendant (a) apparently knew he would have to resign in order for the Company to succeed, (b) was then engaged in, or intended to engage in, a scheme to artificially inflate and then "dump" NeoWorlder's assets for his personal benefit, (c) to divert the proceeds to himself and a third party, and (d) to collapse the value of Vision Stream's shares so that they could be acquired for pennies on the dollar.

30. In soliciting Plaintiffs' investments, Defendant also omitted material facts necessary to make his statements, in light of the circumstances under which they were made, not misleading, including that:

a. Defendant was engaged in, or intended to engage in, a pump and dump scheme with a third party involving NeoWorlder's assets;

b. Defendant intended to divide the proceeds of that scheme with a third party and to conceal those proceeds from Vision Stream's manager;

c. Defendant intended to usurp additional business opportunities belonging to NeoWorlder, including gaming opportunities;

d. Defendant intended to collapse the value of Vision Stream's shares in order to acquire them for pennies on the dollar; and

e. Defendant's personal interests were directly adverse to the interests of NeoWorlder and its minority shareholders, including Plaintiffs.

31. The misrepresented and omitted facts were material. Any reasonable investor would have considered it important to know that the Chief Executive Officer and controlling

shareholder of the company in which it was investing apparently "needed" to resign in order for the Company to succeed and was engaged in or planned to engage in a scheme to manipulate and profit from the Company's assets at the Company's and its investors' expense.

32. As NeoWorlder's Chief Executive Officer, a director, and manager of its controlling shareholder at the time, and as the person soliciting Plaintiffs' investments, Defendant owed Plaintiffs a duty to disclose these material facts. Having chosen to speak regarding his intended conduct and NeoWorlder's integrity and value, Defendant was also obligated to speak fully and truthfully.

33. Plaintiffs actually and reasonably relied on Defendant's representations and on the completeness of his disclosures in deciding to invest in NeoWorlder. Plaintiffs would not have invested in NeoWorlder, or would have invested on materially different terms, had they known the truth.

**III. Defendant's Pump and Dump Scheme.**

34. It is not yet known precisely when Defendant began to engage in his scheme. Upon information and belief, however, the scheme was underway, or Defendant had formed the intent to engage in it, within weeks of when PAKCO contributed $400,000.00 in capital to NeoWorlder in February 2026.

35. Upon information and belief, Defendant and a third party (the "Co-Conspirator"), agreed to artificially inflate the value of NeoWorlder's token and then sell those assets at the artificially inflated value for their own personal benefit, leaving NeoWorlder and its minority shareholders with devalued or worthless assets. Defendant and Co-Conspirator also discussed usurping corporate opportunities and ways to render the value of the Company worthless in order to acquire Vision Stream's shares.

36. Defendant's scheme was captured on audio recording.

37. On the recording(s), Defendant and the Co-Conspirator can be heard, among other things:

a. discussing the division of funds from their scheme;

b. discussing how to secret those funds from Vision Stream's manager;

c. discussing additional opportunities that could be usurped by virtue of the scheme;

d. contemplating ways to collapse the value of Vision Stream's shares in NeoWorlder in order to acquire those shares for pennies on the dollar; and

e. belittling Plaintiffs and making fun of their lack of knowledge in the artificial intelligence and cryptocurrency field.

38. Defendant received a material personal benefit from the investments of NeoWorlder's shareholders, including Plaintiffs, all the while setting up plans to artificially inflate the value of NeoWorlder and ultimately leave the Company worthless.

39. Defendant intended to take Plaintiffs' investments and use them in furtherance of his pump and dump scheme.

## IV. Defendant Resigns and Conditions His Remaining Duties on a Release.

40. The scheme was discovered by way of the audio recording(s) described above that were provided by Co-Conspirator.

41. As a result of the disclosure of the scheme, the Board of NeoWorlder was in jeopardy of liability if they went forward with NeoWorlder's token launch.

42. Consequently, on or about April 22, 2026, after the scheme was discovered, Defendant tendered his resignation as Chief Executive Officer and director of NeoWorlder, with an effective date of May 22, 2026.

43. Between April 22, 2026, and May 22, 2026, Defendant remained NeoWorlder's Chief Executive Officer and continued to owe fiduciary duties to NeoWorlder and its shareholders.

44. During that period, Defendant refused to discuss how to position NeoWorlder profitably unless Plaintiffs first provided him a release of claims, improperly conditioning performance of his ongoing duties on a waiver of claims for his own personal benefit.

45. As a direct result of Defendant's self-dealing, NeoWorlder went from a viable enterprise to essentially worthless, as there is no key-man in place to drive the value of the Company. Moreover, there is no way to realize the full value of NeoWorlder as its goodwill has been lost. Indeed, the Company is without on-going funds to continue the enterprise absent on-going cash infusion from the remaining shareholders into a Company for which the value is essentially nothing.

46. Plaintiffs did not know, and could not in the exercise of reasonable diligence have known, of Defendant's scheme, misrepresentations, and omissions until Co-Conspirator delivered the recordings to Plaintiffs. Defendant actively concealed his scheme from Plaintiffs, including by discussing with the Co-Conspirator how to secret the proceeds from Vision Stream's manager.

## V. Derivative Allegations and Irreparable Harm.

47. Plaintiffs bring Counts VI, VII, and VIII derivatively, in the right and for the benefit of NeoWorlder, to redress injuries suffered by NeoWorlder as a result of Defendant's misconduct, pursuant to Federal Rule of Civil Procedure 23.1 and Wyo. Stat. Ann. § 17-16-742.

48. Plaintiffs were shareholders of NeoWorlder at the time of the transactions complained of herein and have continuously held their shares since that time.

49. Plaintiffs will fairly and adequately represent the interests of NeoWorlder and its shareholders in enforcing the rights of the Company. Plaintiffs have retained counsel experienced in commercial and shareholder litigation.

50. Plaintiffs have made demand on the Board to institute this action; however, the only other director is not disinterested, as that director was appointed by Defendant, by and through Javestone. Whether demand is excused is governed by the law of NeoWorlder's state of incorporation. *See: Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 108-09 (1991).

51. Wyoming does not have a "futility" exception to the demand requirement. However, Wyoming does permit immediate action if "irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period." Wyo. Stat. Ann. § 17-16-742(a)(ii).

52. Irreparable harm has been found to exist when a plaintiff has lost value in business activities and personal property values by virtue of allegedly illegal municipal enactments. *See e.g., The Tavern, L.L.C. v. Town of Alpine,* 395 P.3d 167, 177-78 (Sup.Ct.Wy.2017); *see also, Warden v. McLelland,* 288 F.3d 105 (3rd Cir.2002)(permitting case to move forward upon allegations of irreparable harm to the complaining shareholder and company as result of a potential squeeze out of the shareholder).

53. At the time this action was filed, the Board consisted of three (3) directors: Lance Baker, Chad Brinson, and Ramen Varden.

54. Following through with a demand vote would result in irreparable harm to Plaintiffs and the Company for the following reasons:

a. Javestone is controlled by Defendant, who received a material personal benefit from the investments of NeoWorlder's shareholders while setting up plans to artificially inflate the value of NeoWorlder and ultimately leave the Company worthless, and who faces a substantial likelihood of liability on each of the derivative claims asserted herein.

b. Varden was designated or elected by Javestone and serves at the pleasure of Defendant, who, through Javestone. Varden therefore lacks independence from Defendant.

c. Consequently, there is no disinterested director and delaying an action would result in further harm to the company, including total bankruptcy,

which would deprive Plaintiffs of their expectation of having invested in the company.

**COUNT I**
**VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5**
(Direct Claim by Both Plaintiffs Against Defendant)

55. Plaintiffs re-allege and incorporate the allegations in the preceding paragraphs as though fully set forth herein.

56. Plaintiffs bring this claim against Defendant for violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

57. Plaintiffs' purchases of their interests in NeoWorlder, as alleged herein, were purchases of securities.

58. Defendant, in connection with Plaintiffs' purchases of NeoWorlder securities, and by the use of the means and instrumentalities of interstate commerce, including emails, telephone calls, text messages, and interstate wire transfers, directly and indirectly: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, and courses of business that operated as a fraud and deceit upon Plaintiffs, including, at a minimum, the pump and dump scheme and failure to disclose an intended resignation in order for the Company to succeed.

59. Defendant's false and misleading statements and omissions are specified with particularity in Paragraphs 28 through 30, above.

60. Defendant acted with scienter. He knew, or was reckless in not knowing, that his statements were false and misleading and that he was omitting material facts. Defendant's scienter is established by, among other things, (a) his own recorded statements discussing the division of

the scheme's proceeds, how to conceal those proceeds from Vision Stream's manager, and how to collapse the value of Vision Stream's shares; (b) his personal financial motive to profit from the scheme at the expense of NeoWorlder and its minority shareholders; and (c) his position as the Chief Executive Officer, a director, the primary developer, and the controlling shareholder through Javestone of NeoWorlder prior to resignation, which gave him full knowledge of his own conduct and intentions.

61. Plaintiffs reasonably relied on Defendant's misrepresentations and on the integrity and completeness of his disclosures in purchasing NeoWorlder securities. Because Defendant's fraud consisted primarily of omissions of material fact that he had a duty to disclose, Plaintiffs are also entitled to a presumption of reliance. *See: Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153-54 (1972).

62. Defendant's misconduct proximately caused Plaintiffs and the company's economic loss. The very facts that Defendant concealed, namely his scheme to inflate and dump NeoWorlder's assets and to collapse the value of Vison Stream's shares and usurp corporate opportunities, destroyed the value of NeoWorlder and of Plaintiffs' securities.

63. By reason of the foregoing, Defendant violated Section 10(b) of the Exchange Act and Rule **10b-5** and is liable to Plaintiffs for damages in an amount to be determined at trial, but in excess of $75,000.00, exclusive of attorney fees, costs, and interest.

## COUNT II
## VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT
(Direct Claim by Both Plaintiffs Against Defendant)

64. Plaintiffs re-allege and incorporate the allegations in the preceding paragraphs as though fully set forth herein.

65. Plaintiffs bring this claim against Defendant for violation of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

66. NeoWorlder, as the issuer of the securities Plaintiffs purchased, and acting through its Chief Executive Officer, violated Section 10(b) of the Exchange Act and Rule 10b-5 by the acts and omissions alleged herein.

67. At all relevant times, Defendant was a controlling person of NeoWorlder within the meaning of Section 20(a). By reason of his positions as Chief Executive Officer, director, and primary developer and leader of NeoWorlder, and his control of NeoWorlder's majority shareholder at the time, Javestone, Defendant had the power and authority to control, and did control, directly and indirectly, the decision-making of NeoWorlder, including the content of the statements and disclosures made to Plaintiffs in connection with their investments.

68. Defendant was a culpable participant in NeoWorlder's violations, and did not act in good faith, because he personally made the misrepresentations and omissions at issue and personally devised and carried out the scheme alleged herein.

69. By virtue of his position as a controlling person, Defendant is jointly and severally liable with NeoWorlder to Plaintiffs pursuant to Section 20(a) of the Exchange Act for damages in an amount to be determined at trial.

## COUNT III
## VIOLATION OF THE OKLAHOMA UNIFORM SECURITIES ACT OF 2004
(Direct Claim by Both Plaintiffs Against Defendant)

70. Plaintiffs re-allege and incorporate the allegations in the preceding paragraphs as though fully set forth herein.

71. The interests in NeoWorlder that Plaintiffs purchased are securities within the meaning of Okla. Stat. tit. 71, § 1-102.

72. Defendant offered and sold those securities to Plaintiffs by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, as alleged herein. Defendant successfully solicited Plaintiffs' purchases, motivated at least in part by a desire to serve his own financial interests.

73. Plaintiffs did not know of the untruths and omissions, and Defendant knew of them.

74. Defendant is therefore liable to Plaintiffs under Okla. Stat. tit. 71, § 1-509(B).

75. In addition and in the alternative, NeoWorlder, as the issuer and seller of the securities, is liable under Okla. Stat. tit. 71, § 1-509(B), and Defendant, as a person who directly or indirectly controlled NeoWorlder and was an officer and director of NeoWorlder, is jointly and severally liable with and to the same extent as NeoWorlder under Okla. Stat. tit. 71, § 1-509(G).

76. Pursuant to Okla. Stat. tit. 71, § 1-509, Plaintiffs are entitled to recover the consideration paid for their securities, together with interest at the legal rate from the date of purchase, less the amount of any income received on the securities, upon tender of the securities, or, for any securities no longer owned, actual damages, plus costs and reasonable attorneys' fees.

## COUNT IV
## FRAUD AND FRAUDULENT CONCEALMENT
(Direct Claim by Both Plaintiffs Against Defendant)

77. Plaintiffs re-allege and incorporate the allegations in the preceding paragraphs as though fully set forth herein.

78. Defendant made material misrepresentations to Plaintiffs and omitted and concealed material facts regarding his intended conduct and the integrity and value of NeoWorlder, as set forth with particularity above. *See:* Okla. Stat. tit. 76, § 2; Okla. Stat. tit. 15, § 58.

79. Defendant knew his representations were false when made, or made them recklessly without knowledge of their truth, and made them as positive assertions.

80. Defendant had a duty to disclose the facts he concealed by virtue of his positions as NeoWorlder's Chief Executive Officer, director, and controlling shareholder at the time through Javestone, by virtue of the relationship of trust and confidence between Defendant and Plaintiffs, and because he made partial statements regarding his intended conduct and NeoWorlder's integrity and value that were misleading without disclosure of the concealed facts.

81. Defendant made the misrepresentations and concealed the material facts with the intent that Plaintiffs rely on them by investing and continuing to invest in NeoWorlder.

82. Plaintiffs actually and reasonably relied on Defendant's misrepresentations and on the absence of the concealed facts, and would not have invested in NeoWorlder had they known the truth.

83. As a direct and proximate result of Defendant's fraud, Plaintiffs have been damaged in an amount to be determined at trial, but in excess of $75,000.00.

84. Defendant's conduct was intentional, malicious, and in reckless disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages pursuant to Okla. Stat. tit. 23, § 9.1.

**COUNT V**
**CONSTRUCTIVE FRAUD**
(Direct Claim by Both Plaintiffs Against Defendant)

85. Plaintiffs re-allege and incorporate the allegations in the preceding paragraphs as though fully set forth herein.

86. In the alternative to Count IV, Defendant is liable for constructive fraud under Okla. Stat. tit. 15, § 59.

87. As NeoWorlder's Chief Executive Officer, director, and controlling shareholder, and as the person soliciting Plaintiffs' investments, Defendant owed Plaintiffs a legal and equitable duty to disclose fully and accurately all material facts bearing on their investments.

88. Defendant breached that duty by failing to disclose, and by misrepresenting, the material facts described above, and thereby gained an advantage for himself by misleading Plaintiffs to their prejudice.

89. As a direct and proximate result of Defendant's constructive fraud, Plaintiffs have been damaged in an amount to be determined at trial, but in excess of $75,000.00.

**COUNT VI**
**BREACH OF FIDUCIARY DUTY**
(Direct and Derivative Claim Against Defendant)

90. Plaintiffs re-allege and incorporate the allegations in the preceding paragraphs as though fully set forth herein.

91. Plaintiffs bring this claim both derivatively on behalf of NeoWorlder and directly on their own behalf.

92. As NeoWorlder's Chief Executive Officer and a director, and as NeoWorlder's controlling shareholder at the time through Javestone, Defendant owed NeoWorlder and its minority shareholders, including Plaintiffs, fiduciary duties of care, loyalty, and good faith.

93. NeoWorlder is a closely held corporation in that it has a small number of shareholders, there is no ready market for its shares, and its management was directed by Defendant.

94. Defendant breached his fiduciary duties in at least the following ways:

a. endeavoring to engage in a pump and dump scheme involving NeoWorlder's assets for his personal benefit and the benefit of the Co-Conspirator, at the expense of NeoWorlder and its minority shareholders;

b. diverting, or planning to divert, the proceeds of NeoWorlder's assets to himself and the Co-Conspirator and concealing those proceeds from Vision Stream's manager;

c. usurping, or planning to usurp, business opportunities belonging to NeoWorlder, including gaming entities in other countries;

d. plotting to collapse the value of Vision Stream's shares in order to acquire those shares for pennies on the dollar;

e. soliciting and accepting Plaintiffs' investments while concealing his scheme and his conflicts of interest;

f. after tendering his resignation, refusing to discuss how to position NeoWorlder profitably absent a release from Plaintiffs, thereby conditioning performance of his duties on a waiver of claims for his own personal benefit; and

g. intentionally engaging in conduct that rendered NeoWorlder essentially worthless.

95. These breaches constitute breaches of the duties of loyalty, care, and good faith, and were not the product of a valid exercise of business judgment.

96. Defendant's breaches caused injury to NeoWorlder, including the loss of substantially all of its value, for which Plaintiffs seek recovery derivatively on NeoWorlder's behalf.

97. Defendant's breaches also caused Plaintiffs direct injury distinct from that suffered by NeoWorlder, including the loss of the capital Defendant induced them to invest and Defendant's targeted effort to collapse the value of Vision Stream's shares so that Defendant could acquire them.

98. As a direct and proximate result of Defendant's breaches, NeoWorlder and Plaintiffs have been damaged in an amount to be determined at trial, but in excess of $75,000.00. Defendant's conduct was intentional, malicious, and in reckless disregard of the rights of NeoWorlder and Plaintiffs, entitling them to punitive damages pursuant to Okla. Stat. tit. 23, § 9.1.

**COUNT VII**
**CIVIL CONSPIRACY**
(Direct and Derivative Claim Against Defendant)

99. Plaintiffs re-allege and incorporate the allegations in the preceding paragraphs as though fully set forth herein.

100. Defendant and the Co-Conspirator agreed to accomplish an unlawful purpose, or a lawful purpose by unlawful means, namely, to artificially inflate the value of NeoWorlder's assets, sell those assets for their personal benefit, divide the proceeds, conceal the proceeds from Vision Stream's manager, usurp NeoWorlder's business opportunities, and collapse the value of Vision Stream's shares so that they could be acquired for pennies on the dollar.

101. The existence of the agreement is established by, among other things, the recorded conversations between Defendant and the Co-Conspirator described above.

102. Defendant committed overt acts in furtherance of the conspiracy, including the fraud and breaches of fiduciary duty alleged herein.

103. As a direct and proximate result of the conspiracy, NeoWorlder and Plaintiffs have been damaged in an amount to be determined at trial, but in excess of $75,000.00, and Defendant is liable for all damages caused by the acts of the conspiracy.

**COUNT VIII**
**UNJUST ENRICHMENT**
(Direct and Derivative Claim Against Defendant, Pled in the Alternative)

104. Plaintiffs re-allege and incorporate the allegations in the preceding paragraphs as though fully set forth herein.

105. This claim is pleaded in the alternative to the extent Plaintiffs or NeoWorlder lack an adequate remedy at law.

106. Defendant has been unjustly enriched at the expense of Plaintiffs and NeoWorlder by, among other things, obtaining the benefit of Plaintiffs' investments and contributions, while developing his pump and dump scheme.

107. Defendant obtained these benefits through fraud, breach of fiduciary duty, and other wrongful conduct, and it would be inequitable and against good conscience for Defendant to retain them.

108. Plaintiffs and NeoWorlder are entitled to restitution and disgorgement of all benefits Defendant unjustly obtained, in amounts to be determined at trial, and to the imposition of a constructive trust over such benefits and any property traceable to them.

## COUNT IX
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
(Direct Claim by Both Plaintiffs Against Defendant)

109. Plaintiffs re-allege and incorporate the allegations in the preceding paragraphs as though fully set forth herein.

110. Plaintiffs had existing and prospective business and economic relationships with certain entities and individuals (the "Prospective Relationships"), which had a reasonable probability of producing future economic benefit to Plaintiffs, including, per Defendant's own statements on recording, gaming entities in other countries and Oklahoma contractual relationships, at a minimum.

111. Defendant knew of the Prospective Relationships.

112. Defendant intentionally and improperly interfered with the Prospective Relationships, without justification or privilege, by orchestrating his pump and dump scheme, undermining NeoWorlder, plotting to collapse the value of Vision Stream's shares, and conditioning his cooperation on an improper release of claims.

113. As a direct and proximate result of Defendant's interference, Plaintiffs lost the economic benefits of the Prospective Relationships and have been damaged in an amount to be determined at trial.

JURY DEMAND

114. Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs, PAKCO Investments, L.L.C. and Vision Stream, L.L.C., individually and derivatively on behalf of Neoworlder Enterprises, Inc., respectfully request that the Court enter judgment in their favor and against defendant, James Duchenne, as follows:

1. An award of damages as prayed for herein in an amount to be proven at trial;
2. An award of interest and attorney fees as allowed by law;
3. The costs of this action to be taxed against Defendant; and/or
4. For any such other further relief as may be just and proper.

Dated: October 22, 2026.

Respectfully submitted,

s/ Collin R. Walke
Collin R. Walke, OBA #22328
HALL ESTILL
100 N. Broadway, Suite 2900
Oklahoma City, Oklahoma 73102
Telephone: (405) 553-2322
cwalke@hallestill.com
**ATTORNEY FOR PLAINTIFFS**

**VERIFICATION**

I, Chad Brinson, of lawful age, am the Manager of PAKCO Investments, L.L.C. and am authorized to make this verification on its behalf. I have read the foregoing *Verified Complaint*. The facts alleged therein relating to PAKCO Investments, L.L.C. and its investment in Neoworlder Enterprises, Inc. are true and correct of my own personal knowledge, and all other facts alleged therein are true and correct to the best of my knowledge, information, and belief, formed after reasonable inquiry. PAKCO Investments, L.L.C. was a shareholder of Neoworlder Enterprises, Inc. at the time of the transactions complained of and has continuously held its shares since that time.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 20th, 2026, at Broken Arrow, OK [City, State].

Chad Brinson, Manager
PAKCO Investments, L.L.C.

## VERIFICATION

I, Lance Baker, of lawful age, am the Manager of Vision Stream, L.L.C. and am authorized to make this verification on its behalf. I have read the foregoing *Verified Complaint*. The facts alleged therein relating to Vision Stream, L.L.C. and its investment in Neoworlder Enterprises, Inc. are true and correct of my own personal knowledge, and all other facts alleged therein are true and correct to the best of my knowledge, information, and belief, formed after reasonable inquiry. Vision Stream, L.L.C. was a shareholder of Neoworlder Enterprises, Inc. at the time of the transactions complained of and has continuously held its shares since that time.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 20, 2026, at Vinita, OK.

Lance Baker, Manager
Vision Stream, L.L.C.